## Case No. 3,908.

### DIKE et al. v. The ST. JOSEPH.

[6 McLean, 573.][1]

Circuit Court, N. D. Illinois. July Term, 1855.

#### GENERAL AVERAGE—ADMIRALTY JURISDICTION—LIEN FOLLOWS PROCEEDS.

1. Where a part of the cargo is thrown overboard for the safety of the vessel, and the lives of the passengers, a contribution may be required from the owner of the vessel, and the cargo saved. This is given in the exercise of a maritime jurisdiction and on the principle of a general average.

[Cited in Oologaardt v. The Anna, Case No. 10,545; Coast Wrecking Co. v. Phoenix Ins. Co., 7 Fed. 242; The San Fernando v. Jackson, 12 Fed. 342; Heye v. North German Lloyd, 33 Fed. 70.]

2. Though there may be a remedy at law, on bonds given, yet that does not take away the jurisdiction in admiralty.

[Cited in The Eclipse, Case No. 4,268.]

3. Where a lien in admiralty attaches, it follows the proceeds into the hands of assignees.

[Appeal from the district court of the United States for the northern district of Illinois.]

Mr. Wate, for libellants.

Mr. Hayne, for the respondent.

OPINION OF THE COURT. This is an appeal in admiralty. On a voyage from Buffalo to Chicago, in the fall of 1851, the propeller St. Joseph being laden with a cargo of merchandise, by stress of weather was driven on the Michigan shore of Lake Huron, at half past seven o'clock in the evening. It was found impossible to back or heave the vessel off. All hands were immediately employed to construct a temporary dock on which to convey the cargo to the shore. The next morning, the hands commenced carrying the goods on shore, and continued the same during the day; but in the evening the wind hauled to east south east, blowing a gale, and causing the boat to strike heavily and leak badly. The temporary dock was broken up by the heavy sea. The danger of the loss of the vessel and cargo became imminent, unless she was speedily lightened and got off. And to accomplish this, large quantities of merchandise were thrown overboard, by means whereof, the remainder of the cargo, and the vessel, were saved. A libel was filed claiming contribution from the vessel on a general average.

The answer admits the allegations of the libel, but the lien on the vessel is denied; and it is alleged, that when the goods were delivered to the consignee, an average bond was entered into, in which the owners agreed to pay the balance of the average, and that thereby the lien on the vessel and cargo saved, were waived. The district court entered a decree against the defendant.

In returning the answer the counsel rely on the case of Cutler v. Rae, 7 How. [(48 U.

[1] [Reported by Hon. John McLean, Circuit Justice.]

S.) 729.] That was a case where a vessel on a voyage from New Orleans to Boston, was run ashore in a storm in Massachusetts bay, by which the vessel was lost, but the cargo and the lives of the passengers were saved, the amount of the cargo being of the value of five thousand four hundred dollars, which was delivered to the consignee at Boston. The court in that case held, that the goods having been delivered to the consignee, the lien under the general average was terminated. Average contribution is the creation of the maritime law, and is founded in the great principles of equity. This principle is fully recognized in the Rhodian laws, and is sanctioned by all civilians, who have either spoken or written on the subject. It is nothing more or less than the sacrifice of the cargo or a part of it, to preserve the lives of the passengers under the greatest emergencies. Or to strand the vessel to save the lives of the passengers and the cargo. In such cases those who have suffered loss to save the cargo or vessel, shall have a general average of the property saved, whether vessel or cargo, or a part of the cargo, in proportion to the loss sustained. No subject can be more purely maritime than this. And it is said the contribution may be recovered in equity and in law. If the demand be a lien upon any property within the reach of the court, the proceedings may be in rem. And if any individual within the process of the court is liable, the proceedings may be against him in personam. The lien still continues on the property in the hands of assignees. This doctrine is laid down in Sheppard v. Taylor, 6 Pet. [31 U. S.] 675. And it has been the rule of decisions in the courts of the United States.

A maritime lien adheres to the proceeds of the thing into whose hands soever it may go; and the owner becomes personally liable, and may be proceeded against in personam. This lien upon proceeds often extends to judicial sales. It is argued that there is no jurisdiction in this case, as appears from the decision of Cutler v. Rae, above cited; from the remarks of the court in that case, it does seem to have turned upon a question of jurisdiction. The court say, "We think the case is not within the admiralty jurisdiction." On this ground the judgment was reversed and the cause was remanded to the circuit court, with orders to dismiss the libel. In the Case of Cutler, the libel was filed in personam, by the owner of the vessel, against the consignee, claiming contribution from the part of the cargo saved, for his lost vessel. The court say, in general average, "the party entitled to contribution has no absolute and unconditional lien upon the goods liable to contribute. The captain has a right to retain them until the general average with which they are charged has been paid or secured. This right of retainer is a qualified lien, to which the party is entitled by the maritime law. But it depends upon the pos-

session of the goods by the master or ship owner, and ceases when they are delivered to the owner or consignee. It does not follow them into their hands, nor adhere to the proceeds." This would not seem to be a decision of want of jurisdiction, but on the merits. It might be a matter of doubt whether the defendant being consignee and not owner, having received the property as damaged and saved property, not having undertaken by bond or otherwise to pay an average contribution, was personally liable to pay it. But the libel in the present case was a proceeding in rem against the vessel, on a general average; so that there is an important difference between the case in 7 How. [48 U. S.], and the one before the court. The decision, however, in the Case of Cutler, was by a divided court, and it has not been satisfactory to the profession. nor was it a decision in accordance with the prior decisions of the supreme court. I should conform to it in a case that could not be distinguished from its principles.

It seems to be a settled principle, that where the maritime jurisdiction attaches, the demand may be recovered in rem or in personam. It does not follow that where an action may be maintained on the contract, as in this case, the maritime jurisdiction may not be exercised. The jurisdiction of our court of admiralty, is not limited by that of the English admiralty. The decree of the district court [case unreported] in this case is affirmed.